UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| JOHN F., | ) | |
|     Plaintiff | ) | |
| | ) | |
| v. | ) | 1:20-cv-00464-JDL |
| | ) | |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) ) | |
| | ) | |
|     Defendant | ) | |

## REPORT AND RECOMMENDED DECISION

On Plaintiff's application for disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act, Defendant, the Social Security Administration Commissioner, found that Plaintiff has severe impairments but retains the functional capacity to perform substantial gainful activity. Defendant, therefore, denied Plaintiff's request for disability benefits. Plaintiff filed this action to obtain judicial review of Defendant's final administrative decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, and after consideration of the parties' arguments, I recommend the Court vacate the administrative decision and remand the matter for further proceedings.

### THE ADMINISTRATIVE FINDINGS

The Commissioner's final decision is the April 20, 2020, decision of the

Administrative Law Judge. (ALJ Decision, ECF No. 19-2).[1] The ALJ's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability claims, 20 C.F.R. §§ 404.1520, 416.920.

The ALJ found that Plaintiff has severe, but non-listing-level impairments consisting of schizoaffective disorder and anxiety-related disorder. (R. 12.) The ALJ further found that despite Plaintiff's impairments, Plaintiff has the residual functional capacity (RFC) to perform a full range of work at all exertional levels, and is able to interact with supervisors, make simple work-related decisions, and adapt to simple changes in a routine work setting, and further limited Plaintiff to performing simple, repetitive work tasks in a non-assembly line production paced setting, involving no public interaction or team/tandem collaborative work with coworkers. (R. 15.) Based on the RFC finding, Plaintiff's age, education and work experience, and the testimony of a vocational expert, the ALJ concluded that Plaintiff can perform substantial gainful activity existing in the national economy, including the representative occupations of laundry worker, kitchen helper, housekeeper/cleaner, price marker, document preparer, and addressing clerk. (R. 21-22.) The ALJ determined, therefore, that Plaintiff was not disabled.

## STANDARD OF REVIEW

A court must affirm the administrative decision provided the decision is based on the correct legal standards and is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y*

---

[1] Because the Appeals Council found no reason to review that decision (R. 1), Defendant's final decision is the ALJ's decision.

*of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987).  Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981).  "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts."  *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## DISCUSSION

Plaintiff argues the ALJ's RFC determination is not supported by substantial evidence because the ALJ erred in his evaluation of the evidence, including the opinion evidence.

**A.  The Medical and Opinion Evidence**

In his assessment of Plaintiff's RFC, the ALJ found the opinions of state agency psychological consultants David Houston, Ph.D., and Mary Alyce Burkhart, Ph.D., to be "considerably persuasive," but noted that they did not have the opportunity to consider Plaintiff's hearing testimony or to review the medical evidence submitted after their review of the record.  The ALJ found that the subsequent evidence suggests Plaintiff has moderate limitations in adapting to changes and supports "a more detailed" RFC to "minimize potential for symptom exacerbation and/or decompensation" in a full-time work setting.  (R. 19.)

The ALJ found the opinion of James Werrbach, Ph.D., who conducted a psychological evaluation of Plaintiff on June 26, 2018, to be partially persuasive.  (R. 17.)

3

Dr. Werrbach wrote: Plaintiff "would be able to understand and remember simple, repetitive tasks as well as complex or detailed tasks. It would appear that he would have difficult[y] performing these tasks consistently over a normal workday because of his thought disorder. It would also appear that he would have difficulty interacting in an adequate fashion with coworkers, supervisors, and the general public, given his thought disorder. It would appear that for the same reason he would struggle with changes in his routine, given his thought disorder." (R. 466.)

Omar Conteh, LMSW, a treating therapist, determined that Plaintiff was limited in his ability to perform meaningful work for an extended period because of marked mental impairments and concluded Plaintiff would be off task 20 percent of the workday. The ALJ discounted Mr. Coneth's opinion in part.

The ALJ characterized Plaintiff's mental health providers' treatment notes as suggesting some improvement of Plaintiff's symptoms over time, including Plaintiff leaving his apartment more often to visit relatives, attend family events and attend church, and becoming more attentive to his activities of daily living. (R. 17.)

**B. Analysis**

Plaintiff argues that the ALJ unreasonably relied on the state agency opinions in part because the ALJ found Plaintiff's severe impairments to consist of the conditions diagnosed by Dr. Werrbach and not the conditions diagnosed by Drs. Burkhart and Houston. The conditions diagnosed by Drs. Burkhart and Houston are different from the conditions the ALJ determined to be the severe impairment from which Plaintiff suffered. Depressive, bipolar, and related disorders, diagnosed by Drs. Burkhart and Houston, are

4

considered under Listing 12.04, while schizoaffective disorder, diagnosed by Dr. Werrbach, would be evaluated under Listing 12.03.

A diagnosis alone does not dictate or govern a claimant's RFC. *See, e.g., St. Laurent v. Berryhill*, No. 17-cv-053-LM, 2018 WL 1521854, at *3 n.6 (D. N.H. Mar. 28, 2018) (diagnosis alone "is not relevant to an ALJ's RFC assessment; [r]ather, the functional limitations associated with a diagnosis govern the RFC assessment").  Nevertheless, Plaintiff's concern is understandable given that the ALJ was evidently persuaded that Dr. Werrbach, and not Drs. Burkhart and Houston, accurately diagnosed Plaintiff's conditions, declined to adopt Dr. Werrbach's opinions as to certain limitations resulting from the conditions, and found the opinions of Drs. Burkhart and Houston to be more persuasive. While a diagnosis does not dictate the scope of an RFC, it can inform and is relevant to the assessment of whether certain symptoms will persist and perhaps worsen, the efficacy of any treatment, and a claimant's subjective statements and activity level.

The Court, however, does not have to determine whether the ALJ erred in relying on the opinions of Drs. Burkhart and Houston to form the RFC despite finding that the conditions diagnosed by the doctors were neither severe nor non-severe impairments.  A review of the ALJ's opinion and the record reveals that the ALJ otherwise erred in his assessment of the expert opinions.

When he found the opinions of Drs. Burkhart and Houston to be "considerably persuasive," the ALJ wrote:

> [T]hey did not have the opportunity to review the medical evidence submitted after their review of the record or the hearing testimony, which suggests that the claimant has moderate limitations in adapting to changes.

5

> Lastly, post-assessment evidence supports a more detailed residual functional capacity to minimize potential for symptom exacerbation and/or decompensation in full time competitive work setting.

(R. 19.) Although he determined the consultants' opinions were more persuasive than Dr. Werrbach's opinion, the ALJ also determined that the limitations imposed by Drs. Burkhart and Houston were insufficient because the post-assessment evidence, including medical evidence, demonstrated that Plaintiff was more limited in adapting to changes and that Plaintiff's condition would deteriorate without greater limitations. In other words, the ALJ concluded the evidence generated after the consultants' review was material to Plaintiff's RFC.

An ALJ "is perfectly competent to resolve conflicts in expert opinion evidence regarding RFC by … judging whether later submitted evidence is material …." *Breingan v. Astrue*, No. 1:10-cv-92-JAW, 2011 WL 148813, at *6, n.5 (D. Me. Jan. 17, 2011). However, "a DDS non-examining expert's report cannot stand as substantial evidence in support of an administrative law judge's decision when material new evidence has been submitted [that] call[s] the expert's conclusions into question." *Eaton v. Astrue*, No. 07-188-B-W, 2008 WL 4849327, at *5 (D. Me. Nov. 6, 2008). In this case, by concluding that the evidence "supports a more detailed residual functional capacity" [than the limitations found by Drs. Burkhart and Houston], the ALJ acknowledged that the new evidence raised questions about the opinions of Drs. Burkhart and Houston.

If the subsequent evidence were limited to non-medical evidence, perhaps the ALJ could have permissibly assessed the evidence and included greater limitations in Plaintiff's RFC. As the ALJ wrote, however, the subsequent material evidence included "medical

6

evidence." (R. 19.)  The ALJ cannot, as a layperson, interpret the subsequent medical data as part of the RFC determination,[2] incorporate his interpretation into the RFC, and effectively resolve the conflict in expert opinion evidence in favor of the opinions of Drs. Burkhart and Houston, as modified by the ALJ after his assessment of the subsequent medical evidence.[3]  Remand, therefore, is warranted.[4]

## CONCLUSION

Based on the foregoing analysis, I recommend the Court vacate the administrative decision and remand the matter for further proceedings.

## **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen

---

[2] By finding that the subsequent medical evidence "suggests that the claimant has moderate limitations in adapting to changes" and "supports a more detailed residual functional capacity to minimize potential for symptom exacerbation and/or decompensation in full time competitive work setting," the ALJ improperly interpreted raw medical data.  S*ee, e.g., Nguyen*, 172 F.3d at 35; *Manso-Pizzaro*, 76 F.3d at 17.

[3] I recognize that an ALJ can give a claimant the "benefit of the doubt" and include restrictions more favorable to a claimant than the experts. *See Lee v. Berryhill*, No. 2:17-cv-00040-JHR, 2018 WL 793595, at *5 (D. Me. Feb. 8, 2018); *Bowden v. Colvin*, No. 1:13-CV-201-GZS, 244 WL 166496, at *4 (D. Me. Apr. 25, 2014). When doing so, an ALJ typically finds certain opinion evidence to be persuasive as to the RFC determination, concludes that the evidence supports an RFC in accordance with the expert opinion, but gives the claimant the benefit of the doubt and imposes additional limitations to accommodate some of the claimant's subjective complaints.  Here, the ALJ's analysis cannot be construed as affording Plaintiff the benefit of the doubt.  The ALJ imposed additional limitations after finding that evidence, including medical evidence, generated after the experts' review required the additional limitations.

[4] Defendant contends that because the ALJ's RFC includes a prohibition on public interaction, any error in the RFC would be harmless. (Defendant's Opposition at 14, ECF No. 27.) Dr. Werrbach, however, suggests that Plaintiff would have difficulties with supervisors and co-workers.  Because the ALJ determined the subsequent evidence was material to the RFC determination and thus generated questions about the reliability of the opinions of Drs. Burkhart and Houston, and because the ALJ's RFC determination provides that Plaintiff can "appropriately interact with supervisors," (R. 15), the ALJ's lay interpretation of the subsequent medical evidence cannot be deemed harmless error.

(14) days of being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

      Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

      /s/ John C. Nivison
      U.S. Magistrate Judge

Dated this 26th day of April, 2022.